**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MICHAEL MESSENGER,** | : | |
| **Plaintiffs,** | : | **CIVIL ACTION NO. 3:19-308** |
| **v.** | : | **(JUDGE MANNION)** |
| **CABOT OIL & GAS CORPORATION**, *et al.,* | : | |
| | : | |
| **Defendants** | | |

## MEMORANDUM

Pending before the court is the plaintiff Michael Messenger's motion for conditional certification and issuance of notice under 29 U.S.C. §216(b). (Doc. 39). Additionally, Messenger has filed a motion for equitable tolling. (Doc. 71). For the reasons set forth below, the motion for conditional certification will be **GRANTED in part** and **DENIED in part**, and the motion for equitable tolling will be **GRANTED**.

### I.   BACKGROUND

In August 2019, Messenger filed the present motion for conditional certification, (Doc. 39), and a brief in support, (Doc. 40). In it, Messenger alleges that Carrie's Transport & Rental, LLC employed at least sixty individuals who primarily provided services vacuuming water off well pads at

Cabot Oil & Gas Corporation's well sites, but who also collected trash and performed various other manual tasks. These individuals, termed "Laborers," worked shifts of twelve hours and were paid a day rate for their work. Despite working over forty hours per week, Messenger contends they were not paid overtime premiums because they were misclassified as independent contractors. Messenger additionally alleges that supplying such labor was the main business of Carrie's and was essential to Cabot's fracking operations.

Messenger seeks conditional certification pursuant to the Fair Labor Standards Act, ("FLSA"), of a collective action specifically consisting of those Laborers scheduled by Carrie's to provide services operating vacuums on Cabot well pads who were not paid overtime premiums for hours over forty because they were misclassified as independent contractors. Messenger filed a declaration, as well as four others by Laborers, in support of conditional certification. (Doc. 39-2; Doc. 39-3; Doc. 39-4; Doc. 39-5; Doc. 39-6).

Cabot filed a brief in opposition on September 6, 2019, prior to the court granting its motion for an additional extension. The parties then filed a joint case management plan wherein they agreed that all pre-certification

discovery would be completed prior to the due date for the defendants' briefs in opposition. (Doc. 58).

Carrie's then filed a brief in opposition on January 3, 2020, (Doc. 62), and Cabot filed a renewed brief in opposition the same day, (Doc. 61). Messenger filed two reply briefs addressing Cabot's and Carrie's arguments separately. (Doc. 63; Doc. 64).

In May 2020, Messenger filed a motion for equitable tolling, (Doc. 71), and a brief in support, (Doc. 72). Cabot filed a brief in opposition. (Doc. 73). Carrie's also filed a brief in opposition. (Doc. 74). Messenger filed a single reply brief. (Doc. 76).

Messenger also filed a motion for a telephonic status conference on September 25, 2020, (Doc. 80), regarding his two pending motions.

## II.    STANDARD

Certification of a plaintiff's collective action on behalf of "other employees similarly situated" pursuant to § 216(b) proceeds in two steps: (1) conditional certification and (2) final certification. *Zavala v. Wal Mart Stores, Inc.*, 691 F.3d 527, 535-36 (3d Cir. 2012). At step one, the plaintiff must make a "modest factual showing" that the putative opt-in employees may be provisionally categorized as similarly situated to the named plaintiffs for the purpose of "facilitat[ing] the sending of notice to potential class members"

- 3 -

and the conducting of pre-trial discovery. *Id.* at 536 (citations omitted). The plaintiff's burden at step one is a "fairly lenient standard" requiring the production of "some evidence, beyond pure speculation, of a factual nexus between the manner in which the employer's alleged policy" affected the named plaintiffs and those asserted to be similarly situated. *Camesi v. Univ. of Pittsburgh Med. Ctr.*, 729 F.3d 239, 243 (3d Cir. 2013) (citations omitted); *Zavala*, 691 F.3d at 536 n.4 (citations omitted).

Significantly, however, "district courts in this circuit have applied an intermediate standard to the 'similarly situated' inquiry if the parties have already engaged in discovery." *Sloane v. Gulf Interstate Field Services, Inc.*, No. 4:17 WL , 2017 WL 1105236, at *6 (M.D.Pa. Mar. 24, 2017). "Courts have held this intermediate standard to require some factual showing that the similarly-situated requirement is satisfied, as a result of the discovery as measured against the original allegations and defenses." *Id.* (internal quotation marks omitted). Thus, "a more searching standard in cases where substantial discovery has already changed hands is . . . consistent with the Third Circuit's instructions in *Zavala*." *Id.* at *8.

As stated, section 216(b) of the FLSA permits certification only if the opt-in plaintiffs are "similarly situated" to the named plaintiffs. The Third Circuit has indicated the relevant factors to consider as part of this analysis

are "whether the plaintiffs are employed in the same corporate department, division, and location; whether they advance similar claims; whether they seek substantially the same form of relief; and whether they have similar salaries and circumstances of employment." *Zavala*, 691 F.3d at 536-37. Other pertinent factors include, for example, the company division in which the employees worked, factual and employment settings, individual defenses, fairness and procedural consideration, and the reliance on common evidence. *Id.* (citing 45C Am.Jur.2d Job Discrimination §2184).

### III.   DISCUSSION

#### a. Conditional Certification

Cabot and Carrie's oppose conditional certification for different reasons and, as a result, Messenger submitted two reply briefs addressing them separately. The court will likewise address the defendants' arguments separately.

#### i.  Conditional Certification as to Cabot

In it renewed brief opposing conditional certification, Cabot presents a different set of facts that came to light as a result of the parties' pre-certification discovery. Namely, Cabot alleges that Herbert H. Swiney was a well consultant who performed safety and environmental services on Cabot well sites through a Cabot-approved third-party vendor. Swiney also

happened to own Carrie's, which provided vacuuming equipment and laborers in the oil and gas industry but did not have an agreement with Cabot nor was Carrie's a Cabot-approved vendor. Cabot avers that the use of Carrie's services on a well pad where Swiney, its owner, was acting as a well consultant would have created a conflict of interest. Nevertheless, according to Cabot, Swiney convinced an actual Cabot-approved vendor named ZF Stoneworx ("ZF") to allow Carrie's to provide vacuuming equipment and laborers on Cabot well pads under ZF's name. ZF would submit the invoices to Cabot on ZF's letterhead, ZF decals were placed on Carrie's equipment being used on the well pads, and Swiney would refer to Carrie's supervisors and laborers as ZF personnel.

Cabot states that, despite having completed the first phase of discovery, wherein the aforementioned facts regarding ZF were discovered, Messenger has not, and cannot, point to any evidence of a Cabot policy, practice, or directive in violation of the FLSA that was common to Cabot and Carrie's. Cabot asserts that there is no evidence that Cabot was even aware of, let alone involved in, the classification of Messenger or the Laborers or their manner or rate of compensation. Despite this, Cabot argues that Messenger baldly classifies it as a joint employer with Carrie's.

Cabot cites numerous cases arguing that courts will deny conditional certification in joint employer cases where the plaintiff fails to set forth at least some evidence of a common policy, plan, or decision among all defendants in violation of the law. Cabot argues this court should likewise deny conditional certification as to Cabot where Messenger has only produced evidence of policies, practices, or directives of Swiney or Carrie's but not Cabot.

In response, Messenger takes the position that Cabot is misconstruing the relevant standard for conditional certification which requires only that he show the putative collective members are similarly situated—not that each alleged joint employer created and implemented the unlawful policies at issue. Messenger additionally takes issue with the authority and similarity of the cases cites by Cabot.

Upon reviewing the arguments and case law presented by Cabot and Messenger, the court agrees that conditional certification is inappropriate with respect to Cabot. Simply because the focus at this juncture is whether a plaintiff has pointed to some evidence that employees are similarly situated does not mean that Messenger is entitled to rely on bare assertions alone with respect the entities he alleges engaged in the common policy or plan that violated the law. "Plaintiffs can rely on the pleadings, but only as

supplemented by other evidence, such as affidavits." *Guan Ming Lin v. Benihana Nat'l Corp.*, 755 F.Supp.2d 504, 509 (S.D.N.Y. 2010). The plaintiffs' supporting allegations "must be specific, not conclusory." *Id.*; *see also Morales v. Plantworks, Inc.*, No. 05-2349, 2006 WL 278154 (S.D.N.Y. Feb. 2, 2006) (denying conditional certification based upon plaintiffs' conclusory allegations and failure to show a common policy or plan). "Particularly in cases involving Defendants that are separate corporate entities, Plaintiffs must provide some evidence of a common policy to violate the law." *Urresta v. MBJ Cafeteria Corp.*, No. 10-8277, 2011 U.S. Dist. LEXIS 120126, at *18 (S.D.N.Y. Oct. 17, 2011); s*ee also Castro v. Spice Place, Inc.*, No. 07-4657, 2009 WL 229952, at *3 (S.D.N.Y. Jan. 30, 2009) ("Some evidence of such a common policy to violate the law is particularly significant in this case given that Defendant restaurants are six distinct New York corporations and that defendants dispute plaintiffs' characterization of defendants as a joint employer under the FLSA.").

Here, Messenger has not identified sufficient evidence of a *common* policy to violate the law. Indeed, Messenger has not adduced evidence that Cabot participated in any manner in the decision to classify the Laborers as independent contractors or to decline to pay them overtime. While Messenger's accompanying declarations indicate Cabot instructed Laborers

what to do once they were on Cabot's site, they do not contain any allegations Cabot participated in the determinations of pay. To the contrary, as Cabot notes, the declarations specifically indicate that Carrie's was responsible for classifying them as independent contractors, Carrie's issued their payments and reported their income on IRS 1099 forms, and Carrie's set and communicated their work schedules and rates of pay.

Although Messenger urges the court to adopt the reasoning of *Sullivan-Blake v. FedEx Ground Package Sys., Inc.*, No. 18-1698, 2019 WL 4750141 (W.D.Pa. Sept. 30, 2019), there are several significant differences distinguishing that case from the instant one. There, the defendant, FedEx, initially employed the plaintiffs and paid them overtime but subsequently required them to be paid by independent service provider ("ISP") that did not pay overtime. Despite this change, the plaintiffs continued to wear the same FedEx uniform, drive delivery vehicles with FedEx logos on them, and use "special FedEx scanners for tracking packages," and nothing about their jobs changed. *Id.* at *2. The court rejected FedEx's arguments against collective certification based, at least in part, on the fact that the plaintiffs delivered packages exclusively for FedEx, used vehicles bearing FedEx logos, and aspects of their work were managed or directed by FedEx. Although FedEx raised the argument that the ISPs were in charge of the plaintiffs' pay and

that the plaintiffs could not establish that all drivers employed by all ISPs were subject to the same illegal compensation policy, the court noted that those were inquires which would be "undertaken at step two of the certification process with a more developed record." *Id.* at *4.

Conversely, here, there is a "more developed record" insofar as the parties have completed all pre-certification discovery. Where such discovery has occurred, plaintiffs must "make some factual showing that the similarly-situated requirement is satisfied, as a result of the discovery as measured against the original allegations and defenses." *Sloane*, 2017 U.S.Dist.Lexis 43088, at *17. Despite the discovery here, Messenger has not cited to evidence in support of its allegations that the Laborers were victims of a common policy or plan of Cabot and Carrie's. In contrast to *Sullivan-Blake*, Messenger and the other Laborers drove vehicles with ZF decals on them, used vacuuming equipment with ZF logos on it, were referred to as ZF personnel. Additionally, Swiney testified that he personally elected to classify the Laborers as independent contractors after consultation with his personal accountant and that he decided their rate of pay. Messenger has not demonstrated that Cabot had any involvement in those decisions.

While Messenger contends that there is no support for the position that conditional certification should not apply to Cabot solely because it did not

implement its own separate unlawful policy applicable to the Laborers, Messenger overstates his burden. While is it not necessary that Cabot have its own identical policy in violation of the FLSA, Messenger must make at least some showing that Cabot had knowledge of and participation in the illegal policy so as to make it a "common policy to violate the law." Again, in spite of the completion of pre-certification discovery, Messenger has not done so here.

As was observed by another court presented with a similar scenario in *Castro v. Spice Place, Inc.*, "[s]ince the defendants' status as a joint employer has not yet been resolved, plaintiffs must present some evidence to show that defendants maintained a common scheme or policy before this Court can grant collective action certification under §216(b). [Messenger has] not met this burden." 2009 WL 229952, at *3.

Accordingly, the court will **DENY in part** Messenger's motion for conditional certification as it relates to Cabot.

### ii. Conditional Certification as to Carrie's

Carrie's argues that conditional certification is inappropriate since the proposed collective members are not similarly situated. Carrie's asserts that the economic realities test, which applies to Messenger's misclassification claim, requires a highly individualized fact-specific inquiry and that the court

cannot simply look to common payment policies and procedures to determine whether Messenger and the other Laborers were similarly situated. *See Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947) (indicating economic reality rather than technical concepts control whether an individual is an employee within the meaning of the FLSA). Carrie's argues that, in engaging in this analysis, the court should consider what the collective members must prove at trial and "determine whether the proof to demonstrate that the workers are 'employees' or 'independent contractors' can be applied to the class as a whole." (Doc. 62, at 15) (quoting *Bamgbose v. Delta-T Group, Inc.*, 684 F.Supp.2d 660, 669 (E.D.Pa. 2010)).

In considering the pertinent factors here, Carrie's contends that Messenger's and the other Laborers' testimony reveals they are not similarly situated despite the indications in their declarations' that they supplied labor, were paid a daily rate, and were misclassified. In particular, Carrie's notes that while three opt-in plaintiffs testified they were scheduled by Carrie's agents to appear at particular well pads and perform vacuuming, Messenger and another opt-in plaintiff indicated that they came to be under the supervision of Cabot employees.

Carrie's also notes that while one of the opt-in plaintiffs testified about the extensive skills he obtained prior to performing labor for Carrie's and

Cabot and that he was specifically trained regarding pressure, this is contrary to Messenger's claim that he was performing "unskilled" labor.

Lastly, Carrie's cites one of the opt-in plaintiff's testimony that, as a result of his experience, he was one of two individuals appointed to serve as a "lead" and function as a "mouthpiece" for Cabot's company men. (Doc. 62, at 21). Carrie's suggests that this demonstrates another "key difference" in the opt-in plaintiffs' relationship with Carrie's and Cabot. (Doc. 62, at 20).

Relatedly, Carrie's contends that conditional certification should be denied because Messenger's declarations state only generalized assumptions instead of the necessary personal knowledge that other employees experienced the same violations as them. *See White v. Risk Bus. Co.*, 743 F.Supp.2d 380, 388 (D.N.J. 2010) (declining conditional certification because the plaintiffs' certifications provided only "mere generalizations" about the other putative collective members as opposed to personal knowledge of their work situations). Specifically, Carrie's notes that while Messenger's declaration indicates that other Laborers "did the exact same job, were paid the same way, and were subject to all of the same rules and conditions of employment," (Doc. 39-2, at 30), Messenger's deposition testimony indicated that he knew little about the terms and conditions of the other Laborers' employment.

In response, Messenger contends that he met the burden for conditional certification, that independent contractor misclassification is a common policy for which courts will routinely grant conditional certification, and that any discrepancies in the testimony of the opt-in plaintiffs is not appropriately considered in this stage and, even if it were, it would not render the collective dissimilar.

The court agrees with Messenger. At this stage, Messenger is not required to make a *substantial* showing that he is similarly situated. Instead, he must make *some* factual showing of the similarly situated requirement. Here, the court concludes that Messenger has done so by presenting evidence, via declarations and deposition testimony, demonstrating that the putative collective members are similarly situated for purposes of conditional certification. In sum, Messenger has presented evidence that the putative members performed substantially similar job duties operating vacuums on Cabot well pads, were paid a day rate and classified as independent contractors, and were not paid overtime. *See Herring v. Hewitt Assocs., Inc.*, No. 06-267, 2007 WL 2121693, at *6 (D.N.J. July 24, 2007) (rejecting a defendant's argument against certification on the basis that "determining whether the potential plaintiffs are similarly situated [would] require a highly-

individualized and fact-specific analysis into the disparate factual and employment settings of each putative plaintiff").

Although Carrie's contends that the allegations of being similarly situated are based only on generalized assumptions, Messenger cites Swiney's specific testimony that he classified the Laborers as independent contractors and that he personally set the Laborers' day rate, which was the same for all Laborers. (Doc. 64-1, at 7).

As to the alleged discrepancies in job duties cited by Carrie's, while this deposition testimony "may play a more significant role after discovery [is completed] and during an analysis of the second and final similarly situated tier, [Messenger] ha[s] advanced sufficient evidence to meet [his] low burden at this first tier of the similarly situated question." *Felix De Asencio v. Tyson Foods, Inc.*, 130 F.Supp.2d 660, 663 (E.D.Pa. 2001). After all, Messenger must only show that they are similarly situated—not identical. 29 U.S.C. §216(b). Accordingly, the court will **GRANT in part** Messenger's motion for conditional certification as it relates to Carrie's.

### b. Equitable Tolling

An action for unpaid overtime compensation under the FLSA must be commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within

three years after the cause of action accrued. 29 U.S.C. §255(a). In addition, under the FLSA, an action is commenced for named plaintiffs on the date when the complaint is filed, and for non-named plaintiffs, on the date when written consent to become a party plaintiff is filed. 29 U.S.C. §256. "Opt-in plaintiffs' FLSA claims are therefore particularly vulnerable to the running of the statute of limitations while motions for conditional certification and notice remain undecided." *Depalma v. Scotts Co. LLC*, No. 13-7740, 2017 WL 1243134, at *2 (D.N.J. Jan. 20, 2017).

Carrie's ceased operating on January 15, 2019.[1] Messenger indicates that he does not seek to pursue claims for any workweeks attributable to work performed for Carrie's successor entity—*i.e.*, for any workweeks after January 15, 2019. Thus, Messenger originally sought notice for the time period of three years prior to the date of the court's order approving notice until January 15, 2019. However, in light of the passage of time, allegedly due in part to the defendants' insistence on the completion of pre-certification discovery, Messenger requests the court toll the statute of limitations as of

---

[1] Although Messenger initially indicated that Carrie's ceased operating on January 15, 2019, (Doc. 40, at 7), he subsequently states that it ceased operating on January 15, 2018, (Doc. 72, at 8). Messenger's proposed notice utilizes the January 15, 2019 date. Because Carrie's "redlining" of Messenger's proposed notice, (Doc. 62-7, at 2), did not modify the January 15, 2019 date, the court will likewise utilize the January 15, 2019 date.

August 23, 2019—the date that Messenger filed the motion for conditional certification.

Messenger urges that equitable tolling is appropriate here where the delay was not occasioned by Messenger or the opt-in plaintiffs. Messenger cites a plethora of cases wherein courts have elected to equitably toll the statute of limitations in FLSA cases. Messenger emphasizes that, in light of the timeframe here, any collective member who opts in after receiving notice will find his claims barred or in the third year of the FLSA's statute of limitations, which is applicable only if he can prove that the defendants acted "willfully" in reckless disregard of their obligations under the FLSA.

It is "a well-established principle of law that equitable tolling doctrines are 'read into every federal statute of limitation.'" *Ramadan v. Chase Manhattan Corp.*, 156 F.3d 499, 504 (3d Cir.1998) (quoting *Holmberg v. Armbrecht*, 327 U.S. 392, 396–97 (1946)). The doctrine "can rescue a claim otherwise barred as untimely by a statute of limitations when a plaintiff has been prevented from filing in a timely manner due to sufficiently inequitable circumstances." *Santos ex rel. Beato v. United States*, 559 F.3d 189, 197 (3d Cir. 2009) (internal citation omitted).

The Third Circuit has identified three scenarios where equitable tolling applies: "(1) where the defendant has actively misled the plaintiff respecting

- 17 -

the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum." *Hedges v. United States*, 404 F.3d 744, 751 (3d Cir. 2005) (internal quotation marks omitted). These three scenarios are not exclusive, however, as the ultimate question is whether a grant of equitable tolling would be "in the interest[s] of justice." *Taylor v. Pittsburgh Mercy Health Sys., Inc.*, Civ. No.09–377, 2009 WL 1324045, at *3 (W.D.Pa. May 11, 2009). Many courts have applied the doctrine of equitable tolling in FLSA cases like the present where, in accordance with "the court's managerial responsibility" to oversee the certification process," equitable tolling was necessary despite not fitting squarely into one of the three instances identified by the Third Circuit. *Jones v. Giant Eagle*, No. 18-1534, 2019 WL 4743687, at *5 (W.D.Pa. Sept. 30, 2019).

"[T]he delay caused by the time required for a court to rule on a motion, such as one for certification of a collective action in a FLSA case, may be deemed an 'extraordinary circumstance' justifying application of the equitable tolling doctrine." *Yahraes v. Restaurant Assocs. Events Corp.*, No. 10-cv-935, 2011 WL 844963, at *2 (E.D.N.Y. Mar. 8, 2011)(collecting cases). "While plaintiffs wishing to pursue their rights cannot sit on them indefinitely,

those whose putative class representatives and their counsel are diligently and timely pursuing the claims should also not be penalized due to the courts' heavy dockets and understandable delays in rulings." *McGlone v. Cont. Callers, Inc.*, 867 F.Supp.2d 438, 445 (S.D.N.Y. 2012). Such is the case here where the delay is attributable to numerous factors, none of which are the fault of the opt-in plaintiffs. Indeed, "the inherent benefits of the collective action 'will disappear' if [opt-in] plaintiffs are not notified of the suit before their statute of limitations expires." *Stickle v. SCI Western Mkt. Support Ctr.*, No. 08-083, 2008 U.S.Dist.Lexis 83315, at *64-65 (D.Ariz. Sept. 29, 2008) (quoting *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989)). Indeed, although it dealt with tolling in the context of individual claims filed prior to certification in class actions, the Third Circuit's recent decision in *Aly v. Valeant Pharmaceuticals International Inc.*, recognized that tolling is, "at its core, an equitable doctrine," and "while [the] Court remains concerned with judicial economy . . . it need not be achieved at the expense of litigant for whom the [] tolling rule was designed." __ F.3d. __, 2021 WL 2448108, at *7 (3d Cir. 2021) (internal quotation marks omitted). Furthermore, "statutes of limitation are intended to prevent the 'surprise' revival of old claims that plaintiffs failed to diligently pursue. But surprise is not an issue in this context." *Id.* at *6.

Case 3:19-cv-00308-MEM   Document 90   Filed 06/21/21   Page 20 of 21

Accordingly, the court will **GRANT** Messenger's motion for equitable tolling and will toll the statute of limitations as of August 23, 2019. As a result, the time period listed on the notice will be for the three years prior to August 23, 2019, or August 23, 2016, to January 15, 2019.

### c. Notice

Carrie's raises numerous objections to Messenger's proposed notice, reminder, and consent form and also incorporates the objections raised by Cabot. Messenger concedes to certain modifications such as the removal of the undersigned's name from the notice and that social security numbers, dates of birth, and telephone numbers are unnecessary unless the notices are returned as undeliverable. Messenger contests nearly all of Carrie's remaining objections.

Preliminarily, the court will hold, as it has in the past, that a reminder notice is permitted. *See Higgins v. Bayada Home Health Care, Inc.*, No.16-2382, 2018 WL 8368874, at *3 (M.D.Pa. May 11, 2018). However, in light of the number and specificity of the objections to the form of the notice, the reminder, and the consent form, including, for example, whether certain sentences should be underlined, the parties are **DIRECTED** to confer and within **fourteen days** to submit an agreed-upon notice, reminder, and consent form to the court for approval.

## IV.   CONCLUSION

For the reasons set forth above, Messenger's motion for conditional certification and issuance of notice, (Doc. 39), is **DENIED in part** with respect to Cabot and **GRANTED in part** with respect to Carrie's. Messenger's motion for equitable tolling, (Doc. 71), is **GRANTED**, and the court will toll the statue of limitations as of August 23, 2019.

Within **fourteen days** from the date of this memorandum and order, counsel for Messenger and Carrie's are **DIRECTED** to confer and to submit an agreed-upon notice, reminder notice, and consent form for the court's review and approval.

Finally, Messenger's motion for a telephonic status conference regarding his pending motions, (Doc. 80), is **DENIED without prejudice** to renew.

An appropriate order follows.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: June 21, 2021**
19-0308-01