UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL MESSENGER, | : |
| Plaintiff | : CIVIL ACTION NO. 3:19-CV-308 |
| v. | : (JUDGE MANNION) |
| CABOT OIL & GAS CORPORATION, ET AL, | : |
| Defendants | : |

## MEMORANDUM

The parties have briefed the issue of whether Plaintiff's claims against Defendant Cabot Oil & Gas Corporation ("Cabot") should proceed as a potential class action, collective action, or another category of suit. (Doc. 103; Doc. 104; Doc. 107; Doc. 108). Plaintiff, for himself and on behalf of those similarly situated, sued Cabot, Defendant Carrie's Transport & Rental, LLC ("Carrie's"), and Defendant Herbert H. Swiney under the Fair Labor Standards Act and the Pennsylvania Minimum Wage Act, to recover overtime pay. (Doc. 19). He thereafter moved for conditional certification of a collective action and for permission to issue notice to potential opt-in plaintiffs. (Doc. 39). The court granted Plaintiff's motion with respect to Carrie's and denied it with respect to Cabot. (Doc. 91). It then approved the parties' proposed class notice and consent forms for mailing. (Doc. 93).

Including Mr. Messenger, 25 Plaintiffs have opted into this action. (Docs. 5, 20-1, 32-1, 35-1, 38-1, 55-1, 65-1, 66-1, 67-1, 69-1, 75-1, 94-1, 95-1, 96-1). The parties now disagree on whether these plaintiffs may proceed in a collective action against Cabot despite the court's denial of conditional certification as to Cabot. (Doc. 104 at 17; Doc. 107 at 14). The court concludes that they cannot.

I.  BACKGROUND

The Fair Labor Standards Act of 1938 was enacted "with the goal of protecting all covered workers from substandard wages and oppressive working hours." *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 147 (2012); *see also* 29 U.S.C. §202. The Act requires, among other things, that an employer compensate an employee for hours exceeding forty in a workweek, at a rate "not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. §207(a). Plaintiff alleges that he and other Laborers, employed by Defendants to operate large vacuums on Cabot's well pads, were not paid overtime rates when they worked over forty hours. (Doc. 19 ¶¶28, 32). That was because, according to Plaintiff, the Laborers were improperly classified as independent contractors rather than employees. (Id. ¶¶42, 60).

An employer who violates §207(a) is liable to affected employees for their unpaid overtime compensation. 29 U.S.C. §216(b). "[O]ne or more employees" may maintain an action under the FLSA against their employer "for and in behalf of himself or themselves and other employees similarly situated." *Id.* To be a party plaintiff to such an action, an employee must give his or her consent in writing. *Id.*

An action brought under this provision and on behalf of others is known as a "collective action." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 69 (2013); *Halle v. West Penn Allegheny Health Sys.*, 842 F.3d 222–23 & n.5 (3d Cir. 2016). Unlike a class action (which is governed by Rule 23 of the Federal Rules of Civil Procedure), an FLSA collective action "depends upon the affirmative participation of opt-in plaintiffs." *Halle*, 842 F.3d at 224; *see also* 29 U.S.C. §216(b). A court overseeing such an action must decide whether the plaintiffs pursuing it are "similar situated" as required by the Act. As "a practical approach to managing FLSA collective actions," courts in this circuit and others have adopted a "two-step certification process." *Halle*, 842 F.3d at 224.

The first step, called "conditional certification," requires that a named plaintiff "make a 'modest factual showing'—something beyond mere speculation—to demonstrate a factual nexus between the manner in which

the employer's alleged policy affected him or her and the manner in which it affected the proposed collective action members." *Id.* (quoting *Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527, 536 n. 4 (3d Cir. 2012). "The 'sole consequence' of conditional certification is the dissemination of court-approved notice to potential collective action members." *Id.* (quoting *Genesis*, 569 U.S. at 75).

The second step, which follows discovery, is "final certification." *Id.* at 226. The named plaintiffs at this stage "bear the burden of showing that the opt-in plaintiffs are 'similarly situated' to them for FLSA purposes," *id.*, and they must satisfy this burden by a preponderance of the evidence. *Zavala*, 691 F.3d at 537. This step can be occasioned by a motion for final certification or a motion to decertify. *Halle*, 842 F.3d at 226.

So at the conditional certification stage, which typically occurs before certification-related discovery, the plaintiffs' burden is less demanding than it is at final certification, which occurs after such discovery. *See id.* at 536. But, like here, conditional certification sometimes occurs after some discovery has been conducted. *See Sloane v. Gulf Interstate Field Servs., Inc.*, 2017 WL 1105236, at **7–10 (M.D. Pa. 2017). The court previously recognized that in such a situation, an "intermediate" standard should apply—one which requires "some factual showing that the similarly-situated

requirement is satisfied, as a result of the discovery as measured against the original allegations and defenses." (Doc. 90 at 4 (quoting *Sloane*, 2017 WL 1105236, at *6)).

Plaintiff's motion for conditional certification was filed in August 2019. (Doc. 38). Cabot submitted its first brief in opposition in September 2019. (Doc. 49). In their October 2019 joint case management plan, the parties agreed that pre-certification discovery ("phase 1") would be completed by December 6, 2019, after which Cabot could file a renewed brief in opposition. (Doc. 58; Doc. 58-1). Pre-certification discovery was conducted, and Cabot filed its renewed opposition brief. (Doc. 61). Plaintiff then filed a reply brief. (Doc. 63).

Applying the intermediate standard, the court concluded that Plaintiff had made no showing that Cabot was involved in the decision to classify the Laborers as independent contractors, and thus denied Plaintiff's motion for conditional certification as it related to Cabot. (Doc. 90 at 10–11, 21; Doc. 91).

II.    DISCUSSION

At issue now is the practical significance of the court's previous decision. It denied conditional certification, after pre-certification discovery

- 5 -

and applying the intermediate standard, with regard to Cabot; does that mean that the opt-in plaintiffs may no longer pursue an FLSA action against Cabot collectively?

According to Cabot, the court "concluded that Messenger was not similarly situated to the opt-ins (current or prospective) with respect to Cabot." (Doc. 104 at 8; Doc. 108 at 3).[1] Cabot argues that the opt-in Plaintiffs are bound by that holding and thus may not pursue their claims against Cabot collectively. (Doc. 104 at 8–10).

Plaintiff first responds that opt-in FSLA plaintiffs consent to join an action as whole, rather than to a particular claim, (Doc. 107 at 3–8), a proposition which Cabot does not dispute. (Doc. 108 at 2). More to the point, Plaintiff's second argument is that the court's conditional certification decision was not a determination "as to the merits" of whether the Messenger is similarly situated to the opt-in Plaintiffs, and thus cannot limit how these Plaintiffs may pursue their claim against Cabot. (Doc. 107 at 8–11).

---

[1] Earlier in its brief, Cabot states more precisely that "[t]his Court has already concluded that Messenger failed to show that he and the opt-in plaintiffs are similarly-situated with regard to claims against Cabot." (Doc. 104 at 6). Later, however, it describes our decision as a "substantive determination" that the opt-in Plaintiffs are not similarly situated to Mr. Messenger. (Id. at 7–8).

Cabot in reply notes that we applied a "more searching" standard here than the typical conditional certification decision, because pre-certification discovery had already been conducted. (Doc. 108 at 4). It therefore argues that our decision was a "final determination" on the issue of certification. (Id. at 7).

The Court of Appeals in *Halle* observed that "[a] denial at the conditional certification stage is not necessarily a final determination of whether the matter may proceed as a collective action." 842 F.3d at 224. Based on this statement, Cabot posits that "*Halle* acknowledged that a denial at the conditional certification stage can be a final determination." (Doc. 108 at 6). *Halle's* language suggests as much: if a conditional certification denial is not *necessarily* a final determination, there must be instances in which it *is* final. Cabot asserts that this is one such instance. (Doc. 108 at 6–7).

From *Halle*, we can gather that denial of conditional certification is neither *per se* conclusive, nor *per se* inconclusive, regarding the possibility of collective action. Because this case was situated between the two steps, and because the steps are designed to assist in the practical management of collective actions, it is useful to consider exactly how Plaintiff's showing was lacking.

Again, for an employee to bring an FLSA action on behalf of other employees, the employees must be "similarly situated." 29 U.S.C. §216(b). As the statute does not define "similarly situated," the Court of Appeals has identified factors relevant to this determination, which "include (but are not limited to): whether the plaintiffs are employed in the same corporate department, division, and location; whether they advance similar claims, whether they seek substantially the same form of relief; and whether they have similar salaries and circumstances of employment." *Zavala*, 691 F.3d at 536–37. "Plaintiffs may also be found dissimilar based on the existence of individualized defenses." *Id.* at 537 (citing *Ruehl v. Viacom, Inc.*, 500 F.3d 375, 388 n.17 (3d Cir. 2007)). Considering that §216(b) is a mechanism for holding *an employer* liable, that the "similarly situated" determination is made with reference to the opt-in plaintiffs' claims *against their employer*, and that the individualized defenses *of their employers* may render potential collective-action plaintiffs dissimilar, it is apparent that these plaintiffs' similarity cannot be evaluated independently of their relationship with the defendant employers. That is, the plaintiffs must be similarly situated not only with respect to each other, but also as to the way each defendant employer allegedly harmed them. This conclusion is consistent with conditional certification's requirement that a plaintiff's showing "demonstrate a factual

nexus between the manner in which *the employer's alleged policy* affected him or her and the manner in which it affected the proposed collective action members." *Halle*, 842 F.3d 215, 224 (3d Cir. 2016) (emphasis added). It follows from this requirement that a collective action may not be certified against an employer absent a showing that the employer had some policy affecting the plaintiff employees.

Accordingly, district courts have recognized that employees are not entitled to pursue an FLSA collective action where they have shown no common policy. *See Postiglione v. Crossmark, Inc.*, 2012 WL 5829793, at **6–7 (E.D. Pa. 2012) (concluding that the proposed FLSA collective-action plaintiffs were not "similarly situated" because they had not demonstrated any "common policy" by their employer with regard to either of their claims); *Moeck v. Gray Supply Corp.*, 2006 WL 42368 (D. N.J. 2006) (finding that the plaintiffs failed to meet the "lenient" notice stage standard because they had "provided little evidence that the class members that they seek to represent were the victims of a single, policy, decision, or plan"); *Prise v. Alderwoods Grp., Inc.*, 817 F. Supp. 2d 651, 681 (W.D. Pa. 2011) (decertifying classes because the plaintiffs had "failed to provide sufficient support to implicate the existence of a single decision, policy, or plan implemented on a corporate-wide basis.").

Similarly, where employees seek collectively to hold multiple employers liable under the FLSA, courts have required that they present evidence of a policy among these employers. *See Urresta*, 2011 U.S. Dist. LEXIS 120126, at *18 (S.D.N.Y. 2011) ("Particularly in cases involving Defendants that are separate corporate entities, Plaintiffs must provide some evidence of a common policy to violate the law."); *Castro v. Spice Place, Inc.*, 2009 WL 229952, at *3 (S.D.N.Y. 2009) ("[P]laintiff's have not made the necessary showing that [the defendant employers'] actions were a reflection of a common policy, maintained by all defendants, in violation of the FLSA.").

Here, when the court considered Plaintiff's motion for conditional certification, pre-certification discovery had been completed. The opt-in plaintiffs declared that Carrie's determined their pay rates and work schedules. (Doc. 39-2 ¶¶13, 15; Doc. 39-3 ¶¶10, 13; Doc. 39-4 ¶¶10, 12; Doc. 39-5 ¶¶10, 12; Doc. 39-6 ¶¶3, 10, 13). Plaintiff Messenger also declared that his income was reported by Carrie's on IRS Form 1099, which is used to report payments to independent contractors.[2] (Doc. 39-2 ¶10). In their

---

[2] I.R.S. Pub. 15 (2023) ("You must file Forms W-2 to report wages paid to employees. You may also be required to file information returns to report certain types of payments made during the year. For example, you must file Form 1099-NEC, Nonemployee Compensation, to report payments of $600 or more to persons not treated as employees (for example, independent contractors) for services performed for your trade or business."); *see* also I.R.S. Pub. 1779 (Rev. 3-2023).

responses to requests for admission, Messenger and the other opt-in plaintiffs admitted that they received payment from Carrie's and did not enter a written agreement with Cabot. (Doc. 61-7 ¶¶1, 6). Testimony of the opt-in plaintiffs indicates that the Laborers' employment was arranged by Carrie's supervisors Toby and Eric Mancuso, (Doc. 61-8 at 17:6–23:11; Doc. 61-9 at 14:25–16:1; Doc. 61-10 at 19:21–25:21; 61-11 at 13:14–14:15; Doc. 61-12 at 11:20–14:5), that these initial discussions informed the Laborers that they would be paid "on a day-rate basis," (Doc. 61-8 at 23:23–24:1; Doc. 61-9 at 43:2–16; Doc. 61-10 at 20:6–8; 61-11 at 20:13–19; Doc. 61-12 at 16:7–9), involved no mention of benefits, (Doc. 61-8 at 24:10–13; Doc. 61-12 at 16:10–12), and specified that the Laborers would be classified as Form 1099 independent contractors. (Doc. 61-10 at 22:13–16). Defendant Swiney, the owner of Carrie's, (Doc. 19 ¶12: Doc. 26 ¶12), testified that his accountant advised him to classify the Laborers as independent contractors. (Doc. 61-4 at 121:10–123:5).

Upon consideration of the evidence, the court concluded that Plaintiff had not shown that Cabot participated in the classification of the Laborers as independent contractors or the alleged underpayment. (Doc. 90 at 8). He thus had not made any showing of a common policy by Cabot affecting the opt-in plaintiffs. Because Plaintiff did not then satisfy the intermediate "some

evidence" standard, it follows that he did not satisfy the higher, preponderance-of-the evidence standard required at final certification. And since pre-certification discovery had already been completed, the court's conclusion on this score effectively serves as a conclusion regarding final certification. That conclusion is not disturbed by the later consent of additional opt-in plaintiffs, because it was based on an absence of evidence connecting Cabot to the alleged wrongful policies generally. Moreover, the practical management of this action would not be served by rehashing the similarly-situated analysis with regard to Cabot, when a determination has already been reached with the benefit of pre-certification discovery.

Because the court concluded, after pre-certification discovery, that Plaintiff had not produced "some factual showing that the similarly-situated requirement is satisfied," *see Sloane*, 2017 WL 1105236, at *6, (Doc. 90 at 10), it effectively concluded that final certification is not appropriate in this case. That ruling therefore prohibits a collective action against Cabot. In addition, because the standard for FLSA collective-action certification is "less stringent" than the standard for joinder imposed by Federal Rule of Civil Procedure 20, *Halle*, 842 F.3d at 225 n.9, the court must also conclude that the opt-in plaintiffs are not properly joined in Plaintiff's claims against Cabot. *See Postiglione*, 2012 WL 5829793, at *8. The opt-in plaintiffs will therefore

be dismissed with regard to the claims against Cabot. *See Halle*, 842 F.3d at 226 ("If a collective action is decertified at the final stage … the court will decertify the class, dismiss the opt-in plaintiffs without prejudice, and permit the named plaintiffs to proceed to trial."). This dismissal will be without prejudice and will not preclude the opt-in plaintiffs from pursuing claims against Cabot individually. *See id.* at 226 n.11 ("[A] dismissed opt-in plaintiff retains the ability to pursue *individual* claims after a district court decertifies a collective action.").

### III.   CONCLUSION

For the reasons discussed above, the court concludes that the plaintiffs cannot pursue a collective action against Cabot. The opt-in plaintiffs' claims against Cabot will be **DISMISSED** without prejudice. An appropriate order will follow.

*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: January 5, 2024**
19-308-02